Christian Contreras, SBN 330269
Email: CC@Contreras-Law.com
**LAW OFFICES OF CHRISTIAN CONTRERAS**
**PROFESSIONAL LAW CORPORATION**
360 E. 2nd St., 8th Floor
Los Angeles, California 90012
Tel: (323) 435-8000; Fax: (323) 597-0101

Attorneys for Plaintiff,
LEANDRO AVILES

Denisse O. Gastélum, SBN 282771
**GASTÉLUM LAW, APC**
3767 Worsham Ave.
Long Beach, California 90808
Tel: (213) 340-6112
Fax: (213) 402-8622
Email: dgastelum@gastelumfirm.com

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEANDRO AVILES, individually, <br><br> Plaintiff, <br><br> v. <br><br> LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, a public entity; COUNTY OF LOS ANGELES, a public entity; SHERIFF ROBERT G. LUNA, individually; DOES 1-10, inclusive, <br><br> Defendants. | **CASE NO.: 2:25-cv-1948** <br><br> **COMPLAINT FOR DAMAGES** <br><br> 1. Failure to Protect from Harm, Fourteenth Amendment Violation (42 U.S.C. § 1983); <br> 2. Due Process – Fourteenth Amendment Violation (42 U.S.C. § 1983); <br> 3. Municipal Liability (*Monell*, 42 U.S.C. § 1983); <br> 4. Supervisory Liability (42 U.S.C. § 1983); <br> 5. Negligence; <br> 6. Violation of California Government Code §845.6; <br> 7. Violation of California Civil Code §52.1 (Tom Bane Act) <br><br> **DEMAND FOR JURY TRIAL** |

## **INTRODUCTION**

1.  This civil rights concerns the in-custody injury of pretrial detainee LEANDRO AVILES who was brutally attacked while in-custody on June 27, 2024, at the Los Angeles Men's Central Jail ("MCJ") located at 441 Bauchet Street Los Angeles, 90012. This action also seeks to bring to public light the deliberate disregard for safety and protection carried out by the individual defendants in the present action.

2.  LEANDRO AVILES was arrested on April 8, 2024, over a minor non-violent misdemeanor. On June 19, 2024, LEANDRO AVILES went to court to try to change his court date but was arrested due to him missing a court hearing on June 13, 2024.

3.  On June 19, 2024, LEANDRO AVILES was housed with his cellmate, known as "Listo," in GP on floor 4800, cell Charlie 7 in MCJ. Initially, from June 19, 2024, to June 23, 2024, LEANDRO AVILES and his cellmate got along. However, on June 24, 2024, the phone in their cell stopped working, which led to a decline in his cellmate's mental health. LEANDRO AVILES' cellmate was struggling with personal tragedies: his son had committed suicide around 2020, his daughter was living on the streets, and his girlfriend had recently left him. On June 27, 2024, LEANDRO AVILES' cellmate had a mental breakdown and repeatedly stabbed LEANDRO AVILES.

4.  Despite knowing about the attack, it took about five (5) minutes for the deputies to respond. After deputies arrived at the cell, LEANDRO AVILES was beginning to lose consciousness. Despite the near fatal attack, the deputies did not remove LEANDRO AVILES' cellmate from the cell and instead left him inside with LEANDRO AVILES. Deputies attempted to use a taser on LEANDRO AVILES's cellmate, which triggered him further. He continued to brutally stab LEANDRO AVILES for approximately five (5) additional minutes for a total of at least ten (10) minutes. Eventually, an unconscious LEANDRO AVILES was dragged out of the cell as he was choking on his blood.

**COMPLAINT FOR DAMAGES**

5.     Long before LEANDRO AVILES's near fatal attack, each of the individually named defendants from the County of Los Angeles ("COUNTY") and the Los Angeles County Sheriff's Department ("LASD") knew that there existed a great indifference to the safety and protection of the inmates who were in the government's custody within the Los Angeles County correctional facilities, including MCJ. As evidence of this, in June 2023, a video was leaked from MCJ, which shows jail staff neglecting to intervene in a violent assault that stretched for more than 10 minutes.[1]

6.     The COUNTY has repeatedly been put on notice of the great dangers which existed within the Los Angeles County correctional facilities through the long history of inmate-on-inmate violence which permeates the jails. Upon information and belief, thirty (30) detainees died while in custody at an LA County jails in 2024. Also, upon information and belief, since 2023, there has been a total of seventy-three (73) deaths in LA County jails.[2]

7.     Despite this long history of complete disregard to inmate safety and protection, the COUNTY defendants in this lawsuit deliberately failed to take even modest actions to prevent inmate violence at the Los Angeles County correctional facilities.

8.     Therefore, by the time LEANDRO AVILES was taken into custody and placed at the MCJ, the jail was infested with endemic, ongoing and unabated risks of injury to inmates – risks which indeed resulted in the brutal stabbing of LEANDRO AVILES on June 27, 2024.

## JURISDICTION AND VENUE

9.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, and the laws and

---

[1] Blakinger, Keri. "Fights, Beatings and a Birth: Videos Smuggled out of L.A. Jails Reveal Violence, Neglect." Los Angeles Times, June 24, 2023.
[2] McCann, Sam. "With 30 Deaths in 2024, La Jails Continue Deadly Trend." Vera Institute of Justice, December 19, 2024.

COMPLAINT FOR DAMAGES

1  Constitution of the State of California. Jurisdiction is conferred upon this Court by 28

2  U.S.C. §§ 1331 and 1343.

3      10.    Venue is proper within the Central District of California pursuant to 28

4  U.S.C. § 1391(b)(1) and (2) because all Defendants reside within this district and the

5  events and omissions giving rise to Plaintiff's claims occurred within this district.

6      11.    Plaintiff has complied with the California Tort Claims Act requirements

7  with respect to their claims arising under state law.

8      12.    With respect to the supplemental state claims, Plaintiff requests that this

9  Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over such claims

10  as they arise from the same facts and circumstances which underlie the federal claims.

11  **PARTIES**

12      13.    Plaintiff LEANDRO AVILES is a 25-year-old man from Los Angeles,

13  California. At the time of his incident, he was a pretrial detainee who resided in the

14  County of Los Angeles, California.

15      14.    Defendant COUNTY OF LOS ANGELES (hereinafter also "COUNTY")

16  owns, operates, manages, directs and controls Defendant LOS ANGELES COUNTY

17  SHERIFF'S DEPARTMENT (hereinafter also "LASD"), also a separate public entity,

18  which employs other Doe Defendants in this action. At all times relevant to the facts

19  alleged herein, Defendant COUNTY was responsible for assuring that the actions,

20  omissions, policies, procedures, practices and customs of its employees, including

21  LASD employees, complied with the laws and the Constitutions of the United States

22  and of the State of California.  Defendant COUNTY, through LASD, is and was

23  responsible for ensuring the protection and safety of all persons incarcerated at the

24  LASD correctional facilities and detention centers, including MCJ.

25      15.    Defendant ROBERT G. LUNA (hereinafter also "LUNA"), at all times

26  mentioned herein, was the Sheriff of Defendant LOS ANGELES COUNTY, the

27  highest position in the COUNTY Jails. As Sheriff, Defendant LUNA is and was

28  responsible for the hiring, screening, training, retention, supervision, discipline,

counseling, and control of all COUNTY Jails' employees and/or agents. Defendant LUNA is and was charged by law with oversight and administration of the COUNTY Jails, including ensuring the safety of the inmates housed therein. Defendant LUNA also is and was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the COUNTY Jails alleged herein were committed. Defendant LUNA is being sued in his individual capacities.

16.     At all relevant times, Defendants DOES 1-10, inclusive, were individuals employed as employees/deputies with the defendant LASD, acting within the course and scope of that employment, under color of law.

17.     Plaintiff is ignorant of the true names and capacities of Defendants DOES 1-10 ("DOE Defendants") and therefore sue these Defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiff as set forth herein. Plaintiff will amend his complaint to state the names and capacities of each DOE Defendant when they have been ascertained.

18.     The identities, capacities, and/or nature of involvement of the defendants sued as DOES 1-10 are presently unknown to Plaintiff who therefore sue these defendants by fictitious names. Plaintiff is informed, believes, and thereupon alleges that DOES 1-10 include individual law enforcement personnel and mental health staff employed by the LASD and the COUNTY, and that they were involved in some manner and are legally responsible for the wrongful acts and conduct alleged herein. Plaintiff will amend this complaint to substitute the DOE Defendants' true names and capacities when they have been ascertained. Plaintiff is informed, believes, and thereupon alleges that each DOE defendant is a resident of California. On information and belief, DOES 1-10 were and still are residents of the County of Los Angeles, California. DOES 1-10 are sued in both their individual and official capacities.

///

19.     At all relevant times, DOES 6-10 were managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY. At the time of the incident, DOES 6-10 were acting under color of law within the course and scope of their duties as employees for the COUNTY. They had supervisorial authority over DOES 1-5, the COUNTY employees at the COUNTY Jails. DOES 6-10 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

20.     Each of the defendants, including the DOE defendants, caused, and is responsible for, the unlawful conduct and resulting injuries suffered by Plaintiff by, among other things, personally participating in the unlawful conduct, acting jointly, or conspiring with others who did so; by ordering, authorizing, acquiescing in, or setting in motion policies, plans, or actions that led to the unlawful conduct, by failing to take action to prevent the unlawful conduct; by failing and refusing to initiate and maintain adequate training and supervision; by failing to enact policies to address the constitutional rights of protesters despite the obvious need for such a policy; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

21.     Plaintiff is informed and believes and thereon alleges that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiff is further informed and believes and thereon alleges that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of LEANDRO AVILES' constitutional rights and other harm.

22.     Plaintiff is informed, believes, and thereupon alleges that, at all times

**COMPLAINT FOR DAMAGES**

1  relevant hereto, Defendants, and each of them, acted as the agents, servants, and

2  employees of each of the other defendants.

3      23.    In doing each of the acts and/or omissions alleged herein, Defendants, and

4  each of them, acted within the course and scope of their employment.

5      24.    In doing each of the acts and/or omissions alleged herein, Defendants, and

6  each of them, acted under color of authority and/or under the color of law.

7  **FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

8      25.    On or about April 8, 2024, LEANDRO AVILES was arrested for the

9  minor crime of allegedly stealing clothes from a Macy's in Northridge. LEANDRO

10 AVILES then missed a court date on June 13, 2024. On June 19, 2024, LEANDRO

11 AVILES went to court to try to change his court date and was arrested due to him

12 missing his June 13, 2024, court hearing.

13     26.    On June 19, 2024, LEANDRO AVILES was housed with his cellmate,

14 known as "Listo," in GP on floor 4800, cell Charlie 7 in MCJ. Initially, from June 19,

15 2024, to June 23, 2024, LEANDRO AVILES and his cellmate got along. However, on

16 June 24, 2024, the phone in their cell stopped working, which led to a decline in his

17 cellmate's mental health. LEANDRO AVILES' cellmate was struggling with personal

18 tragedies: his son had committed suicide around 2020, his daughter was living on the

19 streets, and his girlfriend had recently left him.

20     27.    On June 25, 2024, LEANDRO AVILES's cellmate stopped eating and

21 had trouble sleeping. He began talking to himself and became increasingly paranoid,

22 frequently jumping out of his bunk and asking LEANDRO AVILES, "Did you hear

23 that?" LEANDRO AVILES's cellmate would then check the phone in their cell

24 approximately every 10 minutes to see if it was working again.

25     28.    On June 26, 2024, LEANDRO AVILES's cellmate started having

26 conversations with himself. LEANDRO AVILES's cellmate continued not eating and

27 began hitting the wall with his fist out of frustration for not having access to a phone.

28 LEANDRO AVILES's cellmate was also pacing nonstop in their cell.

**COMPLAINT FOR DAMAGES**

29.     LEANDRO AVILES did his best not to interact with his cellmate and gave him space. LEANDRO AVILES's cellmate had been in jail for the past 19 months prior to the incident on a murder charge and was previously housed in High Power at Men's Central Jail.

30.     On June 27, 2024, LEANDRO AVILES could feel the tension in the cell as his cellmate continued to act paranoid and constantly checked the phone. LEANDRO AVILES's cellmate continued not eating during this time. On June 27, 2024, at around 6:00 p.m., his cellmate told LEANDRO AVILES that he was fed up with not having access to a phone and that, "We have to press them to move cells." They spoke to a deputy about moving cells but were ignored.

31.     On June 27, 2024, at approximately 11:30 pm, a deputy did a Title 15 welfare and safety check by walking by their cell. LEANDRO AVILES's cellmate was sweating profusely at this time and stuck his hand and arms out of the cell and begged the deputy to move him. LEANDRO AVILES's cellmate stated to the deputy, "I can't be here, I need help, I can't be here, I can't be here." LEANDRO AVILES reported that his cellmate had a saddened and desperate tone of voice when he made these statements to the deputy. The deputy ignored LEANDRO AVILES's cellmate's pleas for help, laughed while shaking his head, and continued walking past their cell.

32.     At this time, LEANDRO AVILES was sitting on the toilet in the cell. LEANDRO AVILES's cellmate's statements to the deputy put LEANDRO AVILES on alert, and LEANDRO AVILES proceeded to pull up his pants without wiping himself. LEANDRO AVILES then told his cellmate, "you good", then his cellmate pulled out a shank from his pocket. This all occurred approximately 15 seconds after the deputy ignored his cellmate's call for help. LEANDRO AVILES tried to deescalate the situation by telling his cellmate, "talk to me, it doesn't have to be this way" and his cellmate responded by stating, "you're done, you're done, you're done" then began stabbing LEANDRO AVILES.

///

33.    As LEANDRO AVILES's cellmate began to stab him, other detainees/inmates on the tier began to yell at LEANDRO AVILES's cellmate to stop stabbing him. A deputy walking the catwalk then flashed their flashlight into the cell but did not issue any command, nor did they try to intervene in any matter as the assault on LEANDRO AVILES escalated.

34.    LEANDRO AVILES tried to defend himself as his cellmate stabbed him on his head, neck, face, eye, and upper body. Upon information and belief, it took about five (5) minutes for the deputies to respond. After deputies arrived at the cell, LEANDRO AVILES was beginning to lose consciousness. LEANDRO AVILES's cellmate then got off him and walked to the gate of the cell to speak with the deputies.

35.    LEANDRO AVILES's cellmate again informed deputies that he could not be in this cell and that he needed to get out. Deputies responded by informing LEANDRO AVILES's cellmate that he had to remain in the cell. Deputies then attempted to use a taser on LEANDRO AVILES's cellmate. This triggered the cellmate, which resulted in the cellmate brutally stabbing LEANDRO AVILES for approximately five (5) additional minutes for a total of no less than ten (10) minutes.

36.    The delay in the deputies' response in getting LEANDRO AVILES out of the cell prompted other detainees/inmates to plea to the deputies to enter the cell and get LEANDRO AVILES. An unconscious LEANDRO AVILES was eventually dragged out of the cell as he was choking on his blood.

37.    After the stabbing, LEANDRO AVILES was transported to the hospital, where he was hospitalized for five (5) to six (6) days. LEANDRO AVILES suffered lacerations and puncture wounds to his eye, head, neck, shoulders, chest, and back, and he lost 100% vision in one of his eyes. LEANDRO AVILES also suffered severe psychological injuries, including diagnosed PTSD, depression, anxiety, and insomnia.

38.    Upon information and belief, LASD deputies and/or custody staff were aware of LEANDRO AVILES' cellmate's mental health conditions which could have led to a violent situation with another inmate. Despite this knowledge, LASD personnel

1  failed to take adequate precautions to protect LEANDRO AVILES.

2      39.    Furthermore, upon information and belief, LASD deputies and/or custody

3  staff were aware of the propensity for the danger posed by LEANDRO AVILES'

4  cellmate and failed to properly classify LEANDRO AVILES' cellmate.

5      40.    Nevertheless, LASD deputies and/or custody staff intentionally and

6  improperly housed LEANDRO AVILES with this dangerous individual, thereby

7  placing him at substantial risk of death or serious harm.

8      41.    By housing LEANDRO AVILES with a dangerous individual, despite

9  LEANDRO AVILES being in custody for a non-violent misdemeanor offense, LASD

10 personnel showed a deliberate indifference to his safety. This indifference ultimately

11 led to LEANDRO AVILES being brutally stabbed by his cellmate.

12     42.    Long before the attack on LEANDRO AVILES, LASD personnel were

13 aware that at the MCJ, there existed a great indifference to the safety and protection of

14 inmates, particularly vulnerable inmates such as LEANDRO AVILES. This

15 indifference was characterized by a total disregard for the well- being of inmates who

16 were susceptible to being preyed upon by violent, predatory inmates.

17     43.    Despite a long history of inmate-on-inmate violence, LASD personnel

18 deliberately failed to take even modest actions to prevent predatory behavior among

19 inmates. As a result, by the time LEANDRO AVILES was taken into custody and

20 housed at MCJ, violent inmates knew they could continue to prey on the most

21 vulnerable without interference from custodial staff or medical/mental health staff.

22     44.    Moreover, Defendants failed to take any reasonable steps to mitigate the

23 obvious and well-known risk of harm, including this inmate-on-inmate violence. This

24 failure is evident in their disregard for LEANDRO AVILES' cellmate's mental health

25 crisis and their failure to promptly rescue LEANDRO AVILES from the dangerous

26 situation he was in.

27     45.    Furthermore, upon information and belief, due to the COUNTY Jails

28 patterns and practices of not conducting proper and timely Title 15 welfare and safety

**COMPLAINT FOR DAMAGES**

checks, LEANDRO AVILES' dire need for emergency intervention went unnoticed by the MCJ staff and deputies, who were responsible for monitoring and ensuring the welfare of all inmates, including LEANDRO AVILES.

46.     Defendants also knew that deputies routinely failed to conduct required Title 15 welfare and safety checks in MCJ and failed to take sufficient actions to correct this problem and ensure that necessary checks were performed.

47.     Upon information and belief, Defendants DOES 1-10, including the custodial and mental health staff of LASD's correctional facility MCJ, failure to conduct the required safety check of LEANDRO AVILES' housing unit on the date of the violent attack evidences deliberate indifference to the risk of harm to LEANDRO AVILES.

48.     Defendants actions and omissions, as herein above recited, directly placed LEANDRO AVILES at substantial risk of the grievous and tragic harm that ultimately occurred.

49.     The County of Los Angeles, Sheriff Robert Luna, and the Los Angeles County Sheriff's Department custodial and medical personnel assigned to its correctional facilities have a responsibility to ensure that the Los Angeles County correctional facilities are safe and that the constitutional rights of detainees such as LEANDRO AVILES are not violated. The County of Los Angeles, the Los Angeles County Sheriff's Department and Sheriff Robert Luna have failed to ensure detainees do not get assaulted in their jails and have failed to protect the civil rights and constitutional rights of detainees within the County/LASD Jails. Accordingly, this claim and the subsequent lawsuit will seek judicial intervention to ensure further constitutional violations and jail assaults do not occur.

///

///

///

///

## FIRST CAUSE OF ACTION

### Failure to Protect from Harm,

### Violation of the Fourteenth Amendment to the United States Constitution

### (42 U.S.C. § 1983)

### (By Plaintiff LEANDRO AVILES As Against Defendants DOES 1-10)

50.    Plaintiff reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

51.    Pretrial detainees such as LEANDRO AVILES have a Fourteenth Amendment due process right to be free from harm. *See Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc); *see also Gordon v. County of Orange,* 888 F.3d 1118, 1124–25 (9th Cir. 2018).

52.    Upon information and belief, on or about June 19, 2024, when Defendants DOES 1-10, and each of them were processing and classifying LEANDRO AVILES, Defendants DOES 1-10 made the intentional decision to place LEANDRO AVILES in a condition of confinement which significantly exposed him to the risk of harm which ultimately resulted in LEANDRO AVILES' brutal stabbing.

53.    Indeed, upon information and belief, on or about June 19, 2024, Defendants DOES 1-10, and each of them continued to make the intentional decision to place LEANDRO AVILES in a cell with a particular cellmate, who had a violent criminal record and who had shown signs of significant distress; these signs exacerbated right before the brutal attack on LEANDRO AVILES. Defendants DOES 1-10, and each of them, made the intentional decision to recklessly mix dangerous inmates with pretrial detainees such as LEANDRO AVILES.

54.    Upon information and belief, foreseeably, LEANDRO AVILES was attacked by his cellmate in his cell on or about June 27, 2024. This attack caused LEANDRO AVILES to be hospitalized for five (5) to six (6) days. LEANDRO AVILES suffered lacerations and punctured wounds to his eye, head, neck, shoulders, chest, and back. Unfortunately, LEANDRO AVILES lost 100% vision in one of his

1  eyes. LEANDRO AVILES also suffered severe psychological injuries, including
2  diagnosed PTSD, depression, anxiety, and insomnia.

3     55.   Upon information and belief, Defendants DOES 1-10 knew that
4  LEANDRO AVILES' cellmate has a propensity for violence and posed a danger to
5  other inmates based on the cellmates' criminal record and his actual behavior inside of
6  jail.

7     56.   Nonetheless, despite having express and actual knowledge about the
8  dangerous and deadly risks which LEANDRO AVILES faced given that he was being
9  housed with a violent inmate, Defendants DOES 1-10, acted with deliberate
10 indifference when they callously made the intentional decision of placing LEANDRO
11 AVILES in the same cell as a dangerous detainee with serious mental health issues.

12    57.   Defendants DOES 1-10, acted with deliberated indifference because they
13 made the conscious choice of housing LEANDRO AVILES with a violent person and
14 consciously disregarded the foreseeable consequence from such action, which was
15 death or serious bodily injury to LEANDRO AVILES.

16    58.   Clearly, given that, upon information and belief, LEANDRO AVILES'
17 cellmate had a known history of violence towards others, placing LEANDRO AVILES
18 in this cell put LEANDRO AVILES at substantial risk of suffering serious harm to
19 which Defendants DOES 1-10, and each of them, did not take reasonable measures to
20 reduce such risk even though any reasonable person would have appreciated the high
21 risks involved in the situation.

22    59.   In fact, Defendants DOES 1-10, and each of them, could have very easily
23 placed LEANDRO AVILES in a different cell, module, or facility to reduce or abate
24 the risks LEANDRO AVILES faced by being housed with a violent inmate.

25    60.   By failing to take such reasonable measures, it was obvious and
26 foreseeable that LEANDRO AVILES would get assaulted by this cellmate.

27    61.   Moreover, on the day of the brutal stabbing of LEANDRO AVILES,
28 Defendants DOES 1-10 failed to remove LEANDRO AVILES from his cell after the

**COMPLAINT FOR DAMAGES**

1   initial stabbing occurred. This failure to remove LEANDRO AVILES from harm's way

2   directly led to the subsequent stabbing of LEANDRO AVILES.

3       62.    Therefore, Defendants DOES 1-10, and each of them deliberately placed

4   LEANDRO AVILES in a condition where LEANDRO AVILES could face a tortious

5   death at the hands of his violent cellmate. Defendants DOES 1-10, and each of them

6   were aware that LEANDRO AVILES was in danger after the first stabbing and failed

7   to protect him from the subsequent stabbing.

8       63.    On June 27, 2024, despite having clear knowledge that LEANDRO

9   AVILES was in danger and had been seriously attacked, Defendants DOES 1-10, and

10  each of them did not take any reasonable available measures to abate the risks

11  LEANDRO AVILES faced even though a reasonable person in the circumstances

12  would have appreciated the high degree of risk involved. This lack of inaction led to

13  the second stabbing of LEANDRO AVILES minutes after the first stabbing.

14      64.    Therefore, Defendants DOES 1-10's conduct caused the obvious

15  consequence that LEANDRO AVILES would face death or serious bodily injury.

16  Accordingly, by not taking such measures, Defendants DOES 1-10 caused LEANDRO

17  AVILES' serious bodily injury.

18      65.    Defendants subjected LEANDRO AVILES to their wrongful conduct,

19  depriving LEANDRO AVILES of rights described herein, knowingly, maliciously, and

20  with conscious and reckless disregard for whether the rights and safety of LEANDRO

21  AVILES and others would be violated by their acts and/or omissions.

22      66.    As a direct and proximate result of Defendants DOES 1-10' acts and/or

23  omissions as set forth above, LEANDRO AVILES, sustained injuries and damages.

24      67.    The conduct of Defendants DOES 1-10 entitles Plaintiff to punitive

25  damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law.

26  Plaintiff does not seek punitive damages against Defendants LASD and COUNTY.

27      68.    Plaintiff is also entitled to reasonable costs and attorneys' fees under 42

28  U.S.C. § 1988, and other applicable United States and California codes and laws.

**COMPLAINT FOR DAMAGES**

### SECOND CAUSE OF ACTION

**Due Process – Fourteenth Amendment Violation**

**(42 U.S.C. § 1983)**

**(By All Plaintiff LEANDRO AVILES As Against DOES 1-10)**

69.     Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

70.     The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law. . ." U.S. Const., Amdt. 14, § 1. The Due Process Clause of the Fourteenth Amendment was intended to prevent government "from abusing [its] power, or employing it as an instrument of oppression." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196, 109 S. Ct. 998, 1003, 103 L. Ed. 2d 249 (1989).

71.     Under the Fourteenth Amendment's substantive due process prong, courts use the "shocks the conscience" test to determine if a violation has occurred. *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). The threshold question is "whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* at 848 n. 8.

72.     As previously alleged, upon information and belief, Defendants DOES 1-10, inclusive, engaged in conduct which was egregious and so outrageous that it shocked the conscience. Upon information and belief, without the egregious and outrageous conduct of Defendants DOES 1-10, inclusive, LEANDRO AVILES would have been out of harm's way and in a safe place. Indeed, upon information and belief, but for the conduct of Defendants DOES 1-10, inclusive, LEANDRO AVILES would have never been exposed serious bodily injury.

73.     Given that Defendants DOES 1-10, inclusive, knew, based on their training, of the risks of their inaction, it was foreseeable that LEANDRO AVILES would suffer death or serious bodily injury, showing that the conduct of Defendant shocks the conscience.

**COMPLAINT FOR DAMAGES**

74.     As a direct and proximate result of Defendants' conduct, the civil rights of LEANDRO AVILES, as protected by the Fourteenth Amendment of the United States Constitution were violated and he suffered serious bodily injury. As a result of the stabbing, LEANDRO AVILES suffered severe psychological injuries, including diagnosed PTSD, depression, anxiety, and insomnia.

75.     Defendants subjected LEANDRO AVILES to their wrongful conduct, depriving LEANDRO AVILES of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of LEANDRO AVILES and others would be violated by their acts and/or omissions. The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against the public entity Defendants.

76.     Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## THIRD CAUSE OF ACTION

### Municipal Liability

### (*Monell* - 42 U.S.C. § 1983)

### (By Plaintiff LEANDRO AVILES As Against Defendants COUNTY and LASD)

77.     Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

78.     In *Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that municipalities were "persons" under § 1983 and thus could be held liable for causing a constitutional deprivation. *Id.* at 690, 98 S.Ct. 2018. The Court explained that while a municipality may not be held liable under § 1983 for the torts of its employees on a theory of respondeat superior, liability

may attach where the municipality *itself* causes the constitutional violation through the execution of an official policy, practice or custom. *Id.* at 690–691, 98 S.Ct. 2018.[3]

79.     As set forth in the forgoing claims for relief, Defendants DOES 1-10 committed clear and well-established violations of constitutional rights against LEANDRO AVILES within the course and scope of their employment as LASD employees, under color of law.

80.     On and for some time prior to June 27 , 2024 (and continuing to the present date), Defendants COUNTY, LASD, and DOES 1-10, acting with deliberate indifference to the rights and liberties of the public in general, and of LEANDRO AVILES, and of persons in his class situation and comparable position in particular, knowingly maintained, enforced and applied officially recognized customs, policies, and practices in violation of person's constitutional rights.

81.     The unconstitutional actions and/or omissions of Defendants DOES 1-10, as well as other employees or officers employed by or acting on behalf of the Defendants COUNTY and LASD, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of Defendants COUNTY and LASD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendant COUNTY and LASD:

    a.   To deny pretrial detainees and other inmates safety and protection by mixing non-violent pretrial detainees with violent inmates;

    b.   To fail to intervene to rescue and inmate from the violent attack of other inmates.

    c.   To deny pretrial detainees and other inmates access to timely, appropriate, competent, and necessary care for serious medical needs, requiring such

---

[3] *See Fairley v. Luman*, 281 F.3d 913, 917 (9th Cir. 2002) ("These alleged constitutional deprivations were not suffered as a result of actions of the individual officers, but as a result of the collective inaction of the Long Beach Police Department.").

inmates in crisis to remain untreated in jail instead of providing for their emergency medical needs;

d. To allow and encourage deputies doing regular cell checks on inmates, including in safety cells, to fail to document their actual observations of the inmate's condition and status, in violation of Los Angeles County's written policies and state law;

e. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical crisis;

f. To cover up violations of constitutional rights by any or all of the following:

   i. By failing to properly investigate and/or evaluate incidents of violations of rights, including by unconstitutional medical care at the jail;

   ii. By ignoring and/or failing to properly and adequately investigate and/or investigate and discipline unconstitutional or unlawful conduct by custodial and medical personnel;

   iii. By allowing, tolerating, and/or encouraging custodial and medical personnel to: fail to file complete and accurate reports; file false reports; make false statements; and/or obstruct or interfere with investigations of unconstitutional or unlawful conduct by withholding and/or concealing material information;

g. To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers, LASD personnel, custodial personnel and medical personnel at the jail whereby an officer or member of the LASD or medical staff does not provide adverse information against a fellow officer, or member of the LASD or the medical staff;

///

h.  To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (g) above, with deliberate indifference to the rights and safety of pretrial detainees, such as LEANDRO AVILES, and in the face of an obvious need for such policies, procedures, and training programs.

82.  The unconstitutional actions and/or omissions of Defendants DOES 1-10, as well as other employees or officers employed by or acting on behalf of the Defendants COUNTY and LASD, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of Defendants COUNTY and LASD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendant COUNTY and LASD:

a.  To fail to properly and adequately hire, train, supervise, and monitor custodial and medical personnel at the jails;

b.  To fail to use appropriate and generally accepted law enforcement procedures for handling persons in need of immediate medical assistance;

c.  To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in need of immediate medical assistance;

d.  To cover up violations of constitutional rights by any or all of the following:

  i.  By failing to properly investigate and/or evaluate complaints or incidents of handling of persons in need of immediate medical assistance;

  ii.  By ignoring and/or failing to properly and adequately investigate and/or discipline unconstitutional or unlawful law enforcement activity; and

**COMPLAINT FOR DAMAGES**

iii.     By allowing, tolerating, and/or encouraging law enforcement officers to: fail to file complete and accurate reports; file false reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful law enforcement conduct by withholding and/or concealing material information;

e.     To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers whereby an officer does not provide adverse information against a fellow law enforcement officer;

f.     To allow, tolerate, and/or encourage a "code of silence" among custodial personnel at the COUNTY jails whereby custodial personnel does not provide adverse information against a fellow staffer;

g.     To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (f) above, with deliberate indifference to the rights and safety of pretrial detainees, such as LEANDRO AVILES, and in the face of an obvious need for such policies, procedures, and training programs.

83.     Defendant supervisors had knowledge of in adequacy of Supervision and deliberate indifference towards inmates' rights to be protected from harm at the Los Angeles County Jails and failed to take corrective action.

84.     Prior to LEANDRO AVILES' serious injuries, high-level COUNTY supervisors, including and SHERIFF LUNA, knew or should have known of a history of years of notice of ongoing violence the Los Angeles County Jails and the ongoing failure to routinely check in on inmates, knew or should have known of inadequate and/or incompetent staffing, insufficient and inadequate.

**COMPLAINT FOR DAMAGES**

85.    The unconstitutional actions and/or omissions of Defendants DOES 1-10 COUNTY and LASD employees, as described above, were approved, tolerated, and/or ratified by policymaking officers for the LASD and COUNTY, including SHERIFF BIANCO and DOES 6-10. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to the authorized policymakers within the COUNTY and LASD, and that such policymakers have direct knowledge of the fact that the serious injures of LEANDRO AVILES were the result of deliberate indifference to his rights to be protected and safe while in the custody of the COUNTY and LASD, and his rights to have access to medical care when suffering a medical emergency. Notwithstanding this knowledge, the authorized policymakers within the COUNTY and LASD have approved of the conduct and decisions of Defendants DOES 1-5 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the serious bodily injuries of LEANDRO AVILES.

86.    By so doing, the authorized policymakers within the COUNTY and LASD have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiff is informed and believes, and thereupon alleges, that Defendants COUNTY and LASD were and are aware of a pattern of misconduct and injury caused by COUNTY Jails custody and medical staff similar to the conduct of Defendants described herein but failed to discipline culpable custody and medical staff and failed to institute new procedures and policy within the COUNTY and LASD.

87.    The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants COUNTY and LASD were a moving force and/or a proximate cause of the deprivations of LEANDRO AVILES' clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983.

**COMPLAINT FOR DAMAGES**

88.    Defendants subjected LEANDRO AVILES to their wrongful conduct, depriving LEANDRO AVILES of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of LEANDRO AVILES, Plaintiff and others would be violated by their acts and/or omissions.

89.    As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants COUNTY and LASD as described above, LEANDRO AVILES suffered serious injuries. Plaintiff is entitled to damages, penalties, costs, and attorneys' fees against Defendants COUNTY and LASD.

## FOURTH CLAIM FOR RELIEF

### Supervisory Liability Causing Constitutional Violations

### (42 U.S.C. § 1983)

### (Plaintiff LEANDRO AVILES As Against Defendant SHERIFF LUNA)

90.    Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

91.    A supervisor can be held liable in his or her individual capacity under § 1983 only if (1) the supervisor personally participated in the constitutional violation, or (2) there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989)).

92.    At all material times, SHERIFF LUNA and DOES 1-10 had the duty and responsibility to constitutionally hire, train, instruct, monitor, supervise, evaluate, investigate, staff, and discipline the other Defendants employed by their respective agencies in this matter, as well as all employees and agents of COUNTY and LASD.

93.    Defendants SHERIFF LUNA and DOES 1-10 failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline the respective employees of their agencies, including Defendants DOES 1-10, and other COUNTY and LASD personnel, with deliberate indifference to Plaintiffs' and others'

22

**COMPLAINT FOR DAMAGES**

1    constitutional rights, which were thereby violated as described herein.

2        94.    As supervisors, Defendants SHERIFF LUNA and DOES 1-10 each

3    permitted and failed to prevent the unconstitutional acts of other Defendants and

4    individuals under their supervision and control, and failed to properly supervise such

5    individuals, with deliberate indifference to the rights to safety and protections while

6    incarcerated at MCJ and the rights to the serious medical and mental health needs of

7    Plaintiff. Each of these supervising Defendants either directed his or her subordinates

8    in conduct that violated Decedent's rights, or set in motion a series of acts and

9    omissions by his or her subordinates that the supervisor knew or reasonably should

10   have known would deprive Plaintiff of rights, or knew his or her subordinates were

11   engaging in acts likely to deprive Plaintiff of rights and failed to act to prevent his or

12   her subordinate from engaging in such conduct, or disregarded the consequence of a

13   known or obvious training deficiency that he or she must have known would cause

14   subordinates to violate decedent Plaintiff ' rights, and in fact did cause the violation of

15   Plaintiff ' rights. (*See*, Ninth Circuit Model Civil Jury Instruction 9.4). Furthermore,

16   each of these supervising Defendants is liable in their failures to intervene in their

17   subordinates' apparent violations of Plaintiff's rights.

18       95.    The unconstitutional customs, policies, practices, and/or procedures of

19   Defendants DOES 1 through 10, COUNTY and LASD , as stated herein, were directed,

20   encouraged, allowed, and/or ratified by policymaking officers for Defendants

21   COUNTY and LASD , including Defendants SHERIFF LUNA and DOES 11-10,

22   respectively, with deliberate indifference to Plaintiff's and others' constitutional rights,

23   which were thereby violated as described above.

24       96.    The unconstitutional actions and/or omissions of Defendants DOES 1

25   through 10, and other COUNTY and LASD personnel, as described above, were

26   approved, tolerated, and/or ratified by policymaking officers for the COUNTY and

27   LASD , including Defendants SHERIFF LUNA and DOES 1-10. Plaintiff is informed

28   and believes and thereon alleges that the details of this incident have been revealed to

Defendants SHERIFF LUNA and DOES 1-10 and that such Defendant-policymakers have direct knowledge of the fact that the death of Plaintiff was not justified or necessary, but represented deliberate indifference to his rights to be protected and safe while in the COUNTY's custody and his rights to her serious medical and mental health needs, as set forth above. Notwithstanding this knowledge, on information and belief, Defendants SHERIFF LUNA and DOES 1-10 have approved and ratified of the conduct and decisions of Defendants DOES 1-10 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in Plaintiff's harm. By so doing, Defendants SHERIFF LUNA and DOES 1-10 have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants SHERIFF LUNA and DOES 1-10 and other policymaking officers for the COUNTY and LASD  were and are aware of a pattern of misconduct and injury, and a code of silence, caused by COUNTY and LASD  custody, medical and mental health staff personnel similar to the conduct of Defendants described herein, but failed to discipline culpable law enforcement officers and employees and failed to institute new procedures and policy within the COUNTY and LASD .

97.    The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants SHERIFF LUNA and DOES 1-10 were a moving force and/or a proximate cause of the deprivations of decedent Plaintiff's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth above.

98.    Defendants subjected Plaintiff to their wrongful conduct, depriving Plaintiff  of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff and others would be

violated by their acts and/or omissions.

99.    As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants SHERIFF LUNA and DOES 1-10 as described above, Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorneys' fees.

## FIFTH CAUSE OF ACTION

### Negligence

### (Plaintiff LEANDRO AVILES As Against All Defendants Save LASD)

100.    Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

101.    The present claim for relief is brought pursuant to Cal. Gov. Code §§ 815.2 and 820. Under § 820 of the Government Code, as public employees, the individuals DOES 1-10 are liable for injuries caused by their acts or omissions to the same extent as private persons. Under § 815.2 of the Government Code, Defendant COUNTY is liable for injuries caused by the acts or omissions of its employees, agents, and/or detectives committed within the course and scope of their employment. This claim for relief is not alleging direct liability against Defendant COUNTY, only vicarious liability.

102.    At all times, Defendants owed LEANDRO AVILES the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

103.    At all times, these Defendants owed Plaintiff LEANDRO AVILES the duty to act with reasonable care.

104.    These general duties of reasonable care and due care owed to LEANDRO AVILES by these Defendants include but are not limited to the following specific obligations:

      a.  To ensure other inmates did not cause LEANDRO AVILES harm;

      b.  To prevent violent attacks by other inmates on LEANDRO AVILES;

///

c.   To promptly summon, or transport LEANDRO AVILES to, necessary and appropriate emergency medical care;

d.   To refrain from unreasonably creating danger or increasing LEANDRO AVILES' risk of harm;

e.   To conduct state mandated safety and welfare checks of inmates in the custody of the COUNTY Jails;

f.   To refrain from abusing their authority granted them by law; and

g.   To refrain from violating Plaintiff's rights as guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

105.   Defendants SHERIFF ROBERT G. LUNA and DOES 1-10, through their acts and omissions, breached each and every one of the aforementioned duties owed to LEANDRO AVILES.

106.   Defendants COUNTY and LASD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

107.   As a direct and proximate result of these Defendants' negligence, LEANDRO AVILES sustained injuries and damages, and against each and every Defendant named in this cause of action in their individual capacities are entitled to relief, including punitive damages against such individual Defendants.

## SIXTH CAUSE OF ACTION

### Violation of California Government Code § 845.6

### (Plaintiff LEANDRO AVILES As Against All Defendants Save LASD)

108.   Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

109.   The present claim for relief is brought pursuant to Cal. Gov. Code §§§ 815.2, 820 and 845.6. Under § 820 of the Government Code, as public employees, the individual defendants are liable for injuries caused by their acts or omissions to the

same extent as private persons. Under § 815.2 of the Government Code, Defendants COUNTY are liable for injuries caused by the acts or omissions of its employees, agents, and/or detectives committed within the course and scope of their employment. This claim for relief is not alleging direct liability against Defendants COUNTY, only vicarious liability. *See* Cal. Gov. Code § 815.2(a-b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

110.   LANDRO AVILES was in need of immediate medical care and treatment and Defendants DOES 1-5 each failed to take reasonable action to summon immediate medical care and treatment. Each such individual defendant, employed by and acting within the course and scope of his/her employment with Defendants COUNTY and LASD knowing and/or having reason to know of LEANDRO AVILES' need for immediate medical care and treatment, failed to take reasonable action to summon such care and treatment in violation of California Government Code § 845.6.

111.   Defendants COUNTY and LASD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

112.   As a direct and proximate result of the aforementioned acts of these Defendants, LEANDRO AVILES was injured as set forth above, and their losses entitle Plaintiff to all damages allowable under California law. Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorney fees under California law, including punitive damages against these individual Defendants.

## SEVENTH CAUSE OF ACTION

### Violation of California Civil Code §52.1

### (Tom Bane Act)

### (Plaintiff LEANDRO AVILES As Against All Defendants Save LASD)

113.   Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

**COMPLAINT FOR DAMAGES**

114.   The present claim for relief is brought pursuant to Cal. Gov. Code §§ 815.2 and 820 and Civil Code Section 52.1. Under § 820 of the Government Code, as public employees, the individual defendants are liable for injuries caused by their acts or omissions to the same extent as private persons. Under § 815.2 of the Government Code, Defendants COUNTY are liable for injuries caused by the acts or omissions of its employees, agents, and/or detectives committed within the course and scope of their employment. This claim for relief is not alleging direct liability against Defendants COUNTY, only vicarious liability. *See* Cal. Gov. Code § 815.2(a-b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

115.   By their acts, omissions, customs, and policies, Defendants, each acting in concert/conspiracy, as described above, while LEANDRO AVILES was in custody, and by threat, intimidation, and/or coercion, interfered with, attempted to interfere with, and violated LEANDRO AVILES' rights under California Civil Code § 52.1 and under the United States Constitution and California Constitution as follows:

a. The right to be free from objectively unreasonable treatment and deliberate indifference to LEANDRO AVILES' serious medical needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments to the United States Constitution and by California Constitution, Article 1, §§ 7 and 13;

b. The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, § 1; and

c. The right to emergency medical care as required by California Government Code §845.6.

d. The right to be free from bodily harm.

///
///
///

**COMPLAINT FOR DAMAGES**

116.    Defendant's violations of LEANDRO AVILES' due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act.[4] Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of LEANDRO AVILES' rights as described above, Defendants violated LEANDRO AVILES' rights by the following conduct constituting threat, intimidation, or coercion:

a.    With deliberate indifference to LEANDRO AVILES' serious medical needs, suffering, and risk of grave harm including death, depriving LEANDRO AVILES of necessary, life-saving care for his medical needs;

b.    Subjecting LEANDRO AVILES to ongoing violations of his rights to prompt care for his serious medical needs, causing immense and needless suffering, intimidation, coercion, and threats to his life and well-being;

c.    Deliberately contracting for and causing the provision of inadequate and incompetent medical health care to Los Angeles County jail detainees and inmates;

d.    Instituting and maintaining the unconstitutional customs, policies, and practices described herein, when it was obvious that in doing so, individuals such as LEANDRO AVILES would be subjected to violence, threat, intimidation, coercion, and ongoing violations of rights as Plaintiff was here.

117.    The threat, intimidation, and coercion described herein were not necessary or inherent to Defendants' violation of LEANDRO AVILES' rights, or to any legitimate and lawful jail or law enforcement activity.

---

[4] *See Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2016 U.S. Dist. LEXIS 126639, at *23 (E.D. Cal. Sept. 16, 2016) (citing *M.H. v. Cty. of Alameda*, 90 F. Supp. 3d 889, 899 (N.D. Cal. 2013); *see also, Cornell v. City and County of San Francisco*, Nos. A141016, A142147, 2017 Cal. App. LEXIS 1011 at *58, f.n. 32 (Cal. Ct. App. Nov. 16, 2017) (approving M.H., supra.); *Reese v. County of Sacramento*, 888 F.3d 1030, 1043-44 (9th Cir. 2018) (following *Cornell*); *Rodriguez v. County of L.A.,* 891 F.3d 776, 799, 802 (9th Cir. 2018) (following *Cornell*).

118. Further, all of Defendants' violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

119. Defendant DOES 1-10's violations of LEANDRO AVILES' due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act.1[5] Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of LEANDRO AVILES' rights as described above, Defendants violated LEANDRO AVILES' rights by the following conduct constituting threat, intimidation, or coercion:

   a. With deliberate indifference to LEANDRO AVILES' serious medical needs, suffering, and risk of grave harm including death, depriving LEANDRO AVILES of necessary, life-saving care for his medical needs;

   b. Subjecting LEANDRO AVILES to ongoing violations of his rights to prompt care for his serious medical needs, causing immense and needless suffering, intimidation, coercion, and threats to his life and well-being;

   c. Instituting and maintaining the unconstitutional customs, policies, and practices described herein, when it was obvious that in doing so, individuals such as LEANDRO AVILES would be subjected to violence, threat, intimidation, coercion, and ongoing violations of rights as Plaintiff was here.

120. The threat, intimidation, and coercion described herein were not necessary or inherent to Defendants' violation of LEANDRO AVILES' rights, or to any legitimate and lawful jail or law enforcement activity.

---

[5] *See Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2016 U.S. Dist. LEXIS 126639, at *23 (E.D. Cal. Sept. 16, 2016) (citing *M.H. v. Cty. of Alameda*, 90 F. Supp. 3d 889, 899 (N.D. Cal. 2013); *see also, Cornell v. City and County of San Francisco*, Nos. A141016, A142147, 2017 Cal. App. LEXIS 1011 at *58, f.n. 32 (Cal. Ct. App. Nov. 16, 2017) (approving M.H., supra.); *Reese v. County of Sacramento*, 888 F.3d 1030, 1043-44 (9th Cir. 2018) (following *Cornell*); *Rodriguez v. County of L.A.,* 891 F.3d 776, 799, 802 (9th Cir. 2018) (following *Cornell*).

COMPLAINT FOR DAMAGES

121.    Moreover, Defendants DOES 1-5, through threats, intimidation, and coercion specifically intended to violate LEANDRO AVILES when they deliberately failed to promptly remove LEANDRO AVILES from his cell after being stabbed by his cellmate the first time. The lack of deliberate inaction led to a subsequent stabbing. Defendants DOES 1-5 intentionally used threats, intimidation, and coercion to violate LEANDRO AVILES' Fourteenth Amendment rights.

122.    Further, all of Defendants' violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

123.    Further, each Defendant violated LEANDRO AVILES' rights with reckless disregard and with the specific intent and purpose to deprive him of his enjoyment of those rights and of the interests protected by those rights.

124.    Defendant COUNTY is vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

125.    As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of LEANDRO AVILES' rights under the United States and California Constitutions, Plaintiff sustained injuries and damages, and against each and every Defendant is entitled to relief, including punitive damages against all individual Defendants, and all damages allowed by California Civil Code §§ 52 and 52.1 and California law, not limited to costs attorneys' fees, and civil penalties.

## REQUEST FOR RELIEF

Wherefore, Plaintiff respectfully requests that the Court enter a judgment as follows:

A.    Violation of LEANDRO AVILES' constitutional rights;

B.    LEANDRO AVILES' pain, suffering, and disfigurement,  pursuant to federal civil rights law and state law;

///

C.    General Damages in excess of the mandatory amount for jurisdiction in the Unlimited Superior Court;

D.    Punitive damages as to individual peace officer defendants;

E.    Attorney's fees pursuant to State Law (Cal. Code Civ. Proc. § 1021.5 & private attorney general doctrine);

F.    A multiplier of damages, including treble damages, and penalties under the Tom Bane Act;

G.    Interest; and

H.    All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure § 1021.5; California Civil Code §§ 52, *et seq*., 52.1; and as otherwise may be allowed by California and/or federal law.

Dated: March 6, 2025        **LAW OFFICES OF CHRISTIAN CONTRERAS**
                              **A PROFESSIONAL LAW CORPORATION**

By: _____
Christian Contreras, Esq.
Attorney for Plaintiff,
LEANDRO AVILES, individually

## **DEMAND FOR JURY TRIAL**

Plaintiff LEANDRO AVILES, individually, hereby makes a demand for a jury trial in this action.

Dated: March 6, 2025        **LAW OFFICES OF CHRISTIAN CONTRERAS**
                              **A PROFESSIONAL LAW CORPORATION**

By: _____
Christian Contreras, Esq.
Attorney for Plaintiff,
LEANDRO AVILES, individually

**COMPLAINT FOR DAMAGES**